IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

KAREN ALBERTS,

        Plaintiff,

  v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

        Defendant.

_____/

No. C 14-01587 RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS**

### I.   INTRODUCTION

Karen Alberts was employed as a police officer for the University of California. As a university employee, she was covered by a supplemental disability insurance plan provided by Liberty Life Assurance Company of Boston ("Liberty"). In 2009, Alberts injured her wrist during training exercises, for which she received short-term disability benefits from Liberty. In February 2012, Liberty determined she was ineligible to receive long-term benefits and therefore stopped paying benefits to her.

Alberts brought a complaint against Liberty in the Alameda County Superior Court for breach of contract and breach of the covenant of good faith and fair dealing. She seeks declaratory relief and damages, including punitive and exemplary damages, related to Liberty's denial of her

claim for long-term disability benefits. Liberty removed the case to federal court and now moves to dismiss. Liberty argues that Alberts' tort claim is time-barred and that she does not state a plausible claim for punitive or declaratory relief under either her first or second claim. The motion is appropriate for disposition without oral argument pursuant to Civil Local Rule 7-1(b). Defendant's motion is granted insofar as plaintiff's tort claim, as currently alleged, is barred by California's two-year statute of limitations. Plaintiff is also not entitled, as a matter of law, to punitive damages for her contract claim. The relevant portions of plaintiff's complaint are, therefore, dismissed as explained below.

## II. BACKGROUND[1]

Alberts, a police officer for the University of California, suffered an injury to her right wrist during physical training exercises in September 2009. After her injury, Alberts resumed work for the police department in a modified duty capacity, but her condition worsened and, eventually, the department could no longer accommodate her medically prescribed work restrictions. On March 19, 2010, Alberts stopped working for the department.

Throughout this period, Alberts was covered by a supplemental disability policy issued by Liberty, under which Liberty was obligated to pay monthly disability benefits to Alberts if she was "totally disabled" within the meaning of the policy. The policy provides two separate periods of coverage, each of which carries a different definition of "totally disabled": short-term disability, which covers the first twelve months of benefits, and long-term disability, which may follow after short-term benefits expire. For short-term coverage, the covered person is considered totally disabled when he or she is "completely unable to perform any and every duty pertaining to his/her *own occupation*." (Exh. A, at P001 (emphasis added).) For long-term coverage, the covered person is considered totally disabled when he or she is "completely unable to perform the material and substantial duties of *any occupation* for which he/she is reasonably fitted by education, training, or experience." (*Id.* (emphais added).)

---

[1] All facts are taken as true from the complaint and the insurance policy referenced therein for purposes of this order.

Alberts filed a claim with Liberty for disability benefits under the policy. After exhausting her accrued sick leave in accordance with the policy, she began to receive short-term benefits as of February 1, 2011. Liberty initially approved her claim through July 31, 2011, and later extended coverage through February 28, 2012. At that time, Liberty terminated her benefit payments, having determined that Alberts did not qualify for continued benefits under the policy's provision for long-term coverage.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This determination is context-specific and requires the court "to draw on its judicial experience and common sense." *Id.* at 679.

### IV. DISCUSSION

A. Statute of Limitations

Liberty first moves to dismiss plaintiff's second claim (breach of the covenant of good faith and fair dealing), arguing the statute of limitations had run before Alberts filed her complaint. The parties agree that, to the extent this claim sounds in tort, it is governed by the two-year statute of limitations set forth in California Code of Civil Procedure § 339(1).[2] *See Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 12–13 (1981); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1144, n.4 (1990). Plaintiff's suit was filed in Alameda Superior Court on February 25, 2014, less than two

---

[2] Plaintiff's claim for breach of contract is governed by a three-year statute of limitation under Cal. Ins. Code § 10350.11. *Frazier v. Metropolitan Life Ins. Co.*, 169 Cal. App. 3d 90, 102 (1985). If defendant's motion is granted, plaintiff suggests she would amend the complaint to bring the breach of the implied covenant of good faith and fair dealing as separate breach of contract and tort causes of action, with only the later subject to the shorter two-year statute of limitations set for in Cal. Civ. Proc. § 339(1). *See Frazier*, 169 Cal. App. 3d at 101–02.

years from the date plaintiff alleges Liberty began withholding benefits on February 28, 2014. Defendant counters that plaintiff's claim accrued not on the date that she ceased to receive benefits but on the date it unequivocally denied her claim for coverage.

In California, the statute of limitations for bad faith claims accrues, and begins to run, when the insurer unequivocally denies the insured's claim for benefits allegedly due under the policy. *See Singh v. Allstate Ins. Co.*, 63 Cal. App. 4th 135, 148 (1998). The complaint does not reference the date Liberty communicated its denial of benefits to Alberts, nor was the denial letter attached to the complaint. Nevertheless, defendant attached a copy to its motion to dismiss and urges the court to consider it for the purpose of determining the date upon which plaintiff's claim accrued.

Although a motion to dismiss is generally concerned with sufficiency of the complaint, the court may consider other evidence upon which the complaint "necessarily relies" without converting the motion into one for summary judgment so long as "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). Those three factors are satisfied here. First, the complaint indirectly references Liberty's denial of benefits, setting forth six occupations which Alberts alleges defendant has incorrectly determined plaintiff is capable of performing and for which she is qualified based on her training or experience. (Complaint, ¶ 14.) Second, the denial letter is central to plaintiff's claims, both of which turn on allegations that she was wrongly denied benefits.

Third, there is no serious question as to the document's authenticity. Plaintiff, naturally, contests the substance conveyed in Liberty's denial letter. She also raises concerns about other documents submitted with the declaration, including documents completely unrelated to her policy or claim. These arguments, however, go to the credibility of the declarant and not the authenticity of the denial letter. It is appropriate, therefore, to consider the letter in support of defendant's motion to dismiss.

In a letter dated February 9, 2012, Liberty informed Alberts it had "completed a thorough review of your continued eligibility for disability benefits, and [had] determined that benefits are not payable." (McGee Decl., Ex. E.) The letter goes on to quote the relevant policy language defining

"total disability" from the thirteenth month of benefits onward (i.e., the benefits for long-term rather than short-term disability). After recounting the results of various medical evaluations, the letter stated: "[Y]ou do not meet University of California's definition of disability as of February 28, 2012, and we must deny your claim for further benefit consideration." Liberty, however, "reserved the right to make a determination on any additional information that may be submitted." The letter then provides information about the means to request review by the California Department of Insurance or by Liberty itself. According to Alberts, the letter cannot be read as an unequivocal denial of coverage in light of these qualifications.

"A statement of willingness to reconsider does not render a denial equivocal." *Migliore v. Mid-Century Ins. Co.*, 97 Cal. App. 4th 592, 605. The court in *Migliore* found that the statement "we are unable to extend coverage to you" constituted "unequivocal language that no further payment on the claim would be made" even though the letter included a qualification that the insurer's decision was "based upon the information available to us at this time," an invitation to submit any other information that might affect the decision, and a notice of the right to review by the California Department of Insurance. *Id.* Consistent with *Migliore*, Liberty's stated willingness to reconsider its decision, and its advisement of various means by which Alberts might seek review of its decision, did not render its February 9, 2012 letter equivocal. As a matter of law, therefore, plaintiffs' claims began to accrue upon receipt of the denial letter.

Plaintiff further argues that there is no evidence properly before the court to demonstrate when she received notice that Liberty had denied her complaint. She does not, however, argue her failure to receive the letter in a timely matter. *See Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956, 964 (9th Cir. 2001) (regarding mailbox presumption). Assuming she received the letter anytime in the two-week period between the date of the letter and February 25, 2012, the two-year statute period would have run before plaintiff filed this suit. The complaint does not set forth any allegations to suggest the statutory period was tolled at any point prior to commencing suit. In light of the denial letter, the authenticity of which is not seriously contested by plaintiff, the complaint

lacks any factual basis to determine whether her tort claim was timely filed.[3]  Claim two must, therefore, be dismissed with leave to amend.

B.  Claims for Putative Damages

Liberty next moves to dismiss plaintiff's claims for punitive damages.[4]  With regard to her claim for breach of contract, plaintiff alleges that Liberty's conduct was "oppressive fraudulent, and malicious within the meaning of Civil Code § 3294" and the company is therefore liable for exemplary damages, including treble punitive damages pursuant to Civil Code § 3345. (Complaint, ¶ 24.)  For the same reasons, plaintiff also seeks punitive damages on her claim for breach of the covenant of good faith and fair dealing. (Complaint, ¶ 29.)

*1.  Section 3294*

California Civil Code § 3294 provides, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."  § 3294(a).  By its terms, § 3294 does not apply to plaintiff's breach of contract claim. *See Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985) ("Under California law, punitive damages are not available for breaches of contract no matter how gross or willful.").  Plaintiff's claim for punitive damages as a result of Liberty's alleged breach of contract is, therefore, dismissed with prejudice.

As to her tort claim, Alberts alleges Liberty "did not conduct a reasonable investigation" into alternative occupations for Alberts, "consciously and deliberately misinterpreted the opinions of Plaintiff's physicians and the results of objective tests and physical examinations," and "deliberately ignored key requirements of [the proposed alternative occupations] that conflict with Plaintiff's

---

[3] Plaintiff now argues defendant's misconduct continued throughout the appeal process.  The complaint, however, focuses on Liberty's investigation and denial of coverage and does not allege any actionable conduct following Liberty's denial of her claim.

[4] Plaintiff insists these arguments should be taken as an (improper) motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, but the Ninth Circuit has held otherwise.  "Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  Rather, such challenges should be brought as a motion to dismiss under Rule 12(b)(6) for failure to state a claim, as Liberty has done. *Id.*; *see also Abiola v. ESA Mgmt., LLC*, Case No. 13-cv-03496-JCS, 2014 U.S. Dist. LEXIS 26918, 12–13, n.4 (N.D. Cal. Mar. 3, 2014).

medical restrictions." (Complaint, ¶¶ 15–17.) These allegations largely consist of conclusions of law, not the type of factual allegation required by Rule 8 of the Federal Rules of Civil Procedure. Moreover, none of these allegations, even if true, states a plausible claim of "malice," "oppression," or "fraud" as those terms are defined in § 3294(c):

> (1) 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) 'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

§ 3294(c). Even in the context of disability insurance claims, where the state court has recognized punitive damages may be particularly appropriate "to discourage the perpetuation of objectionable corporate policies" upon a particularly vulnerable population, *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 820 (1979), plaintiff's conclusory allegations fall short of the mark. *Cf. Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (punitive damages may be available where the plaintiff demonstrates the insurer's bad faith was "part of a conscious course of conduct, firmly grounded in established company policy"). While claim two is otherwise dismissed in its entirety, for the reasons stated above, plaintiff's claim for punitive damages based on defendant's allegedly tortious conduct is also subject to dismissal, with leave to amend, for failure to state a plausible claim under § 3294.

> 2. *Section 3345*

Liberty further argues Alberts cannot recover treble damages pursuant to California Civil Code § 3345 because her claim arises under the common law of tort and not a statutory cause of action. Section 3345 provides that, in an action brought by senior citizens "to redress unfair or deceptive acts or practices or unfair methods of competition," the trier of fact may award up to

treble damages "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter."[5]

Liberty does not contest, in this motion, Alberts' allegation that she is a disabled person as defined in § 1761(g). Rather, it argues she cannot recover treble damages because neither of her claims arises under a *statute* that authorizes the court to impose a penalty. In support, Liberty relies on *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010), in which the California Supreme Court rejected treble recovery for violation of California's Unfair Competition Law because the only monetary remedy authorized by that statute is restitution, which is not a punitive remedy. *Clark* did not, however, address the situation presented in this case, where plaintiff seeks punitive damages for breach of a common law tort.

The state court in *Clark* interpreted § 3345 to authorize treble recovery "only if *the statute under which recovery is sought* permits a remedy that is in the nature of a penalty." *Id.* (emphasis added). According to Liberty, the relevant statute is that which gives rise to the plaintiff's cause of action. This is neither an accurate reading of *Clark* nor consistent with § 3345. *Clark* is clear that § 3345 is concerned with the statutory remedy and not the statutory cause of action: "[T]he trebeled recovery provision comes into play when the governing *statutory remedy* has 'the purpose of effect' of punishing or deterring." *Clark*, 50 Cal.4th at 614 (emphasis added). Section 3345 includes two distinct parts. Subdivision (a) concerns the cause of action: it must be one brought by or on behalf of a senior citizen "to redress unfair or deceptive acts or practices or unfair methods of competition."[6] Subdivision (a) is not, on its face, limited to statutory causes of action. Subdivision

---

[5] In such a case, the court must consider the following factors in determining whether a penalty should be imposed and must make an affirmative finding of one of the following before trebling any such penalty: "(1) Whether the defendant knew or should have known that his or her conduct was directed to one or more senior citizens or disabled persons. (2) Whether the defendant's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person. (3) Whether one or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct." § 3345(b).

[6] Liberty's present motion does not argue that plaintiff's claim falls outside the scope of § 3345(a).

(b) concerns remedies and provides that, when a statute authorizes a punitive remedy, the trier of fact may triple the award based on specific findings. Here, plaintiff seeks recovery pursuant to § 3294, which specifically authorizes the court to impose a punitive remedy.[7]

In the alternative, defendant argues Alberts cannot recover treble damages because the court is not authorized to award punitive damages for any of her claims. As discussed above, however, § 3294 does authorize punitive damages for tort claims, even though the complaint does not plausibly set forth such a claim at this juncture. To the extent Alberts is able to amend her complaint (consistent with Fed. R. Civ. Proc. 11) to assert a claim for punitive damages under § 3294, Liberty has not shown that she is precluded from seeking corresponding damages under § 3345.

C. Declaratory Relief

Finally, Liberty argues Alberts is not entitled to declaratory relief because she does not seek adjudication of any future rights under the insurance contract. The policy, however, entitles Alberts to long-term disability payments until the age of 65 so long as she is "totally disabled" as defined by the policy. Alberts alleges not only that her claim was wrongfully denied, but also that she is presently disabled and therefore continues to be eligible for benefits. (Complaint, ¶ 21.) Although there are no allegations as to Alberts' present age, the complaint is sufficient to state a plausible claim for adjudication of current and future rights under the insurance contract. On that basis, Liberty's motion to dismiss Alberts' claim for declaratory relief must be denied.

V. CONCLUSION

For the reasons stated above, the motion to dismiss is granted in part and denied in part. Claim one of the complaint is dismissed, without leave to amend, only to the extent plaintiff seeks punitive damages pursuant to Cal. Civ. Code § 3294. Claim two is dismissed in its entirety, with leave to amend. Plaintiff's claim for declaratory relief is not subject to dismissal.

---

[7] In fact, the Legislative Counsel's Digest to Senate Bill No. 1157, which enacted § 3345, specifically references recovery under § 3294: "Existing law provides for the award of punitive damages to civil plaintiffs injured as a result of certain unlawful acts involving oppression, fraud, or malice, and awarded in order to punish the defendant." 1988 Cal. Legis. Serv. 823 (West).

IT IS SO ORDERED.

Dated: June 2, 2014

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

IT IS SO ORDERED.

Dated: June 2, 2014

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California