IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

KAREN ALBERTS,

       Plaintiff,

  v.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,

       Defendant.

_____/

No. C 14-01587 RS

**ORDER DENYING MOTION TO DISMISS IN PART PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Karen Alberts was employed as a police officer for the University of California. As a university employee, she was covered by a supplemental disability insurance plan provided by Liberty Life Assurance Company of Boston ("Liberty"). In 2009, Alberts sustained a wrist injury for which she received short-term disability benefits from Liberty. In February 2012, Liberty determined she was ineligible to receive long-term benefits and therefore stopped paying benefits to her. After Liberty's first motion to dismiss was granted in part, Alberts filed a First Amended Complaint ("FAC") asserting claims for breach of contract, tortious breach of the covenant of good faith and fair dealing, and contractual breach of the covenant of good faith and fair dealing. She

seeks declaratory relief and damages, including punitive and exemplary damages, related to Liberty's denial of her claim for long-term disability benefits.

Liberty now moves to dismiss plaintiff's tort claim on the basis of California's applicable two-year statute of limitations. Liberty further moves to dismiss plaintiff's claims and prayer for punitive damages. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument and the hearing set for August 28, 2014, is vacated. For the reasons set forth below, Liberty's motion is denied.

## II.  BACKGROUND[1]

As recounted in the Court's prior order, Alberts was serving as a police officer for the University of California when she suffered an injury to her right wrist during physical training exercises in September 2009. After her injury, Alberts resumed work for the police department in a modified duty capacity, but her condition worsened and eventually the department could no longer accommodate her medically prescribed work restrictions. On March 19, 2010, Alberts stopped working for the department.

Throughout this period, Alberts was covered by a supplemental disability policy issued by Liberty, under which Liberty was obligated to pay monthly disability benefits to Alberts if she became "totally disabled" within the meaning of the policy. The policy provides two separate periods of coverage, each of which carries a different definition of "totally disabled": short-term disability, which covers the first twelve months of benefits, and long-term disability, which may follow after short-term benefits expire. For short-term coverage, the covered person is considered totally disabled when he or she is "completely unable to perform any and every duty pertaining to his/her *own occupation*." For long-term coverage, the covered person is considered totally disabled when he or she is "completely unable to perform the material and substantial duties of *any occupation* for which he/she is reasonably fitted by education, training, or experience."

Alberts filed a claim with Liberty for disability benefits under the policy. After exhausting her accrued sick leave in accordance with the policy, she began to receive short-term benefits as of

---

[1] All facts are taken as true from the complaint and the insurance policy referenced therein for purposes of this order.

1  February 1, 2011.  Liberty initially approved her claim through July 31, 2011, and later extended
2  coverage through February 28, 2012.  At that time, Liberty terminated her benefit payments, having
3  determined that Alberts did not qualify for continued benefits under the policy's provision for long-
4  term coverage.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Pleadings must be so construed so as to do justice."  Fed. R. Civ. P. 8(e).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This determination is context-specific and requires the court "to draw on its judicial experience and common sense."  *Id.* at 679.

### IV. DISCUSSION

A.  <u>Statute of Limitations</u>

Liberty first moves to dismiss the claim for tortious breach of the covenant of good faith and fair dealing, arguing the statute of limitations had run before Alberts filed her original complaint. Liberty asserted a similar argument in its prior motion to dismiss.  At that time, the parties agreed that, to the extent plaintiff's claim sounded in tort, it was governed by the two-year statute of limitations set forth in California Code of Civil Procedure § 339(1).  *See Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 12–13 (1981); *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1144, n.4 (1990).  The prior round of briefing focused primarily on the date on which plaintiff's claim accrued under state law.  Alberts argued her claim did not accrue until the first date she ceased to receive benefits: March 1, 2012.  Liberty countered that Alberts's claim accrued on February 9, 2014, when its agent unequivocally informed Alberts via telephone that her claim for long-term benefits had been denied.  Agreeing with Liberty that plaintiff's claim accrued not on the date that she ceased to receive benefits but on the date Liberty unequivocally denied her claim for coverage,

the Court found that her claim accrued no later than the date upon which Alberts received the letter of denial from Liberty dated February 9, 2012. On that basis, Alberts's tort claim, which was originally filed in the Alameda County Superior Court on February 25, 2014, was dismissed with leave to amend.

The FAC provides additional detail on the relevant course of events. According to the Amended complaint, Liberty's employee Susan Mills called Alberts on February 9, 2012, and told her Liberty would not continue payments after February 28, 2012 because it determined she did not meet the policy's definition of disabled. FAC, ¶ 36. Following that conversation, Mills prepared a letter, dated February 9, 2012, setting forth the basis on which Liberty had denied Alberts's claim. FAC, ¶ 78. Alberts received a copy of that letter on or about February 22, 2012. FAC, ¶ 79. In light of the more detailed allegations set forth in the FAC, Liberty renews its motion to dismiss plaintiff's tort claim, arguing again that her claim for relief accrued as early as February 9, 2012, and certainly no later than February 22, 2012. In either case, according to Liberty, the two-year statutory period had run before Alberts filed her complaint on February 25, 2014.

In response, Alberts relies on a provision of the policy not referenced by either party in the prior round of briefing: "Claimant or the claimant's authorized representative cannot start any legal action: 1. until 60 days after proof of claim has been given; or 2. more than three years after the time proof of claim is required." FAC, Exh. B, at P00034.[2] According to Alberts, this provision displaces the two-year statute of limitations and extends the time in which any claim related to the policy may be brought.

The California Insurance Code requires all disability insurance policies to include the following provision concerning the time limitations for a policyholder to sue an insurer: "No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is

---

[2] The plan description contains a similar provision: "You or your authorized representative cannot start any legal action until 60 days after proof of claim has been given nor more than three years after the time proof of claim is required." FAC, Exh. A, at 46.

required to be furnished." Cal. Ins. Code § 10350.11.  Insurers need not use the exact language set forth in section 10350.11.  "[T]he insurer may, at its option, substitute . . . different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary." *Id.*, § 10350.  When an insurer decides to deviate from the statutorily-mandated language, however, the ordinary principles of contract interpretation will apply and any ambiguities must be construed in a manner to protect the expectations of a reasonable policy holder. *Blue Shield of California Life & Health Ins. Co. v. Superior Court ("Blue Shield")*, 192 Cal. App. 4th 727, 737 (2011).

Federal courts considering this issue have generally concluded that section 10350.11 does not displace the two-year statute of limitations for tort claims arising from disability insurance disputes.  *See, e.g., Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 12571258 (C.D. Cal. 2003); *Monaco v. Liberty Life Assur. Co.*, No. 06-7021-PJH, 2008 WL 1766768 (N.D. Cal. 2008).  These cases relied primarily on *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, which held that section 10350.11 does not establish a statute of limitations for purposes of a federal ERISA claim.  222 F.3d 643, 648 (9th Cir. 2000).[3]  Because federal law does not provide a statute of limitations governing claims for benefits under ERISA plans, federal courts must look to analogous state statutory limitations.  *Id.*, at 646–647.  *Wetzel* concluded that a *contractual* limitations period imposed pursuant to section 10350.11 did not satisfy the need to identify a relevant *statutory* limitations period for purposes of an ERISA claim.  *Id.*, at 648.  That case did not, however, consider a policy provision drafted in accordance with section 10350.11 for purposes of determining the relevant limitations period for a California state law insurance claim.

A more recent California Court of Appeal decision, recognizing the limits of the Ninth Circuit's decision in *Wetzel*, departed from these federal cases and concluded that when an insurance policy incorporates a provision consistent with section 10350.11, but not identical to statute, the relevant question is whether a reasonable policyholder would interpret that provision to

---

[3] *Heighley* also drew support from an unpublished Ninth Circuit opinion which applied *Wetzel* to hold that a policyholder must satisfy both the statutory and contractual limitations period in order to bring suit on policyholder's tortious bad faith claim against an insurer. *Flynn v. Paul Revere Ins. Group*, 2 Fed. Appx. 885, 886 (9th Cir. 2001).

govern the particular claims set forth by the policyholder. *Blue Shield*, 192 Cal. App. 4th at 737. *Blue Shield* considered a policy provision that "Any suit . . . to recover . . . damages concerning . . . any other matter arising out of this Plan . . . must be commenced no later than three years after the date the coverage for benefits in question were first denied." The California court concluded that a "reasonable layperson would interpret [this provision] to mean that she had three years to bring any action based upon an allegedly wrongful cancellation of the policy," including both contractual and tort claims. *Id.*, at 738.

The policy provision at issue in this matter is even broader than that considered in *Blue Shield*. While the *Blue Shield* provision set forth the limitations period for "any other matter arising out of this Plan," the Liberty policy provision applies to "any legal action." Consistent with the most recent state court decision in *Blue Shield*, this provision must be interpreted to allow claims relating to the Liberty policy to be brought within "three years after the time proof of claim is required," notwithstanding prior federal court decisions to the contrary.

Having found that the contractual provision controls in this instance, plaintiff's tort claim is clearly timely. As set forth above, the policy provides that a claimant must bring "any legal action" no more than "three years after the time proof of claim is required." FAC, Exh. B, at P00034. The policy requires proof of claim to be given to Liberty "no later than 30 days after the end of the Waiting Period." FAC, Exh. B, at P00032. The term "Waiting Period" is defined in the Schedule of Benefits; with regard to the plan's long term disability coverage, the applicable waiting period is "12 months from the date the Supplemental Short Term Total Disability Benefits begin." FAC, Exh. B, at P00006. Here the short-term disability benefits began on February 1, 2011 (the first day of benefit eligibility after she exhausted her accumulated sick leave). FAC, ¶ 20. When these provisions are read together, a reasonable layperson would conclude that Alberts has until at least March 2, 2015, to commence "any legal action" relating to the policy.[4] On that basis, plaintiff's tort claim was timely filed on February 25, 2014.

---

[4] This assumes that no further action was required by Liberty to trigger the running of the contractual period. As alleged in the complaint, "At no time was Plaintiff required or requested to submit a separate request or claim for long term disability benefits." FAC, ¶ 49. *Cf. Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025 (9th Cir. 2002) (interpreting a similar provision and

B. Claims for Punitive Damages

Liberty next moves to dismiss plaintiff's claims for punitive damages pursuant to California Civil Code § 3294 and treble damages pursuant to California Civil Code § 3345. Liberty's prior motion to dismiss these damages claims was granted, with leave to amend.

*1. Section 3294*

California Civil Code section 3294 provides, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." § 3294(a). Per the text of the statute, punitive damages are never available solely for a breach of contract claim, "even where the breach is intentional, wilful, or in bad faith." *Miller v. Nat'l Am. Life Ins. Co.*, 54 Cal. App. 3d 331, 336 (1976) (citing *Crogan v. Metz*, 47 Cal. 2d 398, 405 (1956)); *see Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985). However, punitive damages may be recovered "upon a proper showing of malice, fraud or oppression even though the tort incidentally involves a breach of contract." *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 921 (1974). Plaintiff need not ultimately prove a subjective intent to harm, as "malice in fact, sufficient to support an award of punitive damages . . . may be established by a showing that the defendant's wrongful conduct was wilful, intentional, and done in reckless disregard of its possible results. *Schroeder v. Auto Driveaway Co.*, 11 Cal. 3d 908, 922 (1974).

In her prior complaint, Alberts alleged generally that Liberty "did not conduct a reasonable investigation" into alternative occupations for Alberts, "consciously and deliberately misinterpreted the opinions of Plaintiff's physicians and the results of objective tests and physical examinations," and "deliberately ignored key requirements of [the proposed alternative occupations] that conflict with Plaintiff's medical restrictions." (Complaint, ¶¶ 15–17.) Defendant's prior motion to dismiss

---

concluding that a denial letter did not trigger the policy's three-year limitation period absent use of the terms "proof," "request for the proof," or "proof of claim.")

was granted in part on the basis that these conclusory allegations were insufficient to state a plausible claim under § 3294.

On amendment, Alberts has considerably elaborated the factual allegations underlying her claim for punitive damages. For example, Alberts alleges that Liberty required her to jump through meaningless hoops before processing her claim, including an application for Social Security Disability Insurance ("SSDI") benefits to which, she avers, she was plainly not entitled as a long-time state employee. FAC, ¶¶ 31, 102(g). She further alleges that Liberty's agents made various misrepresentations to plaintiff about the relevance of opinions by her treating physicians, improperly rejected diagnoses offered by plaintiff's physicians, attempted to impose evidentiary limits not set forth in the plan or policy, and even conducted surreptitious surveillance of Alberts and her family in violation of its own policies and procedures. FAC, ¶¶ 41(c), 51–58, 95, 102(f). Alberts further alleges that Liberty mislead its own experts by, for example, proffering the denial of her claim for SSDI benefits as evidence of her ability to work when she was ineligible for such benefits solely because of her work history as a state employee. FAC, ¶ 102(g). Finally, Alberts alleges that the timing of Liberty's denial suggests that Liberty only resolved to terminate her claim when it learned its own liability would not be offset based on receipt of SSDI benefits. FAC, ¶ 102(h).

California courts have upheld punitive damages awards where, for example, evidence that an insurer attempted to mislead consulting physicians and procrastinated in resolving claims suggested it did not intend to deliver on its promised coverage. *Miller v. Nat'l Am. Life Ins. Co.*, 54 Cal. App. 3d 331, 339 (1976). Punitive damages may also be available where the insured proffers evidence from which a jury could infer the insurer had a practice of not investigating claims and delaying payments. *Campbell v. Cal-Gard Sur. Servs., Inc.*, 62 Cal. App. 4th 563, 571 (1998). One state court decision found particularly significant evidence that an insurer withheld information provided by the insured from the insurer's own physicians. *Little v. Stuyvesant Life Ins. Co.*, 67 Cal. App. 3d 451, 462 (1977). Assuming the truth of plaintiff's allegations, they are sufficient, at this stage, to present a plausible claim for punitive damages.

    2. *Section 3345*

Liberty further argues Alberts cannot recover treble damages pursuant to California Civil Code § 3345 because her claim arises under the common law of tort and not a statutory cause of action. Section 3345 provides that, in an action brought by disabled citizens, as that term is defined in section 1761(g), "to redress unfair or deceptive acts or practices or unfair methods of competition," the trier of fact may award up to treble damages "[w]henever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter." As recounted in the Court's prior order, section 3345 has been interpreted to authorize treble recovery "only if *the statute under which recovery is sought* permits a remedy that is in the nature of a penalty." *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010) (emphasis added). Section 3294, discussed above, is one such statute that permits a claimant to recover damages in the nature of a penalty.

Liberty's prior motion to dismiss Alberts's claim for treble damages was granted, with leave to amend, because her original complaint failed to set forth a sufficient claim for punitive damages. The FAC, however, adequately remedies those deficiencies, as explained above.

Liberty further argues, without any explanation, that the FAC lacks any allegations establishing that Alberts qualifies as a "disabled person" under section 1761(g). The FAC sets forth various averments concerning Alberts's disability and her claim that she is "totally disabled," at least as defined by the policy. Liberty offers no basis to conclude at this time that these allegations do not satisfy section 1761(g), which defines "disabled person" as one "who has a physical or mental impairment that substantially limits one or more major life activities."

C. Declaratory Relief

Finally, Liberty once again argues Alberts is not entitled to declaratory relief because she does not seek adjudication of any future rights under the insurance contract. The policy, however, entitles Alberts to long-term disability payments until the age of 65 so long as she is "totally disabled" as defined by the policy. Alberts avers she is presently totally disabled, has not yet reached age 65, and is eligible for benefits until she reaches that age. FAC, ¶ 1, 103. These allegations are sufficient, once again, to state a plausible claim for adjudication of current and future

rights under the insurance contract.  On that basis, Liberty's motion to dismiss Alberts' claim for declaratory relief must be denied.

## V.  CONCLUSION

For the reasons stated above, the motion to dismiss is denied.

IT IS SO ORDERED.

Dated: August 19, 2014

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE